DUPRESNE, Judge.
This is an appeal by Richard Reiser, plaintiff-appellant, from an adverse judgment in his suit against the Illinois Central Gulf Railroad Co., (now Illinois Central Railroad Co.) defendant-appellee, for damages sustained in an automobile-train collision. Because we find no manifest error in the trial judge’s finding that the railroad was not at fault in the accident, we affirm.
At about 1:30 P.M. on a clear day, plaintiff was driving north on a two lane street in Jefferson Parish, and approaching a three track railroad crossing. The crossing consisted of two tracks about sixteen feet apart on the south side, and a third track about 110 feet to the north of these two southernmost tracks. It was controlled by two independently activated sets of warning lights, one set being for the two southern tracks, and one set for the northern track. The roadway crosses these tracks at an angle as shown in the Appendix attached hereto.
It is undisputed that as plaintiff approached the crossing he saw a Kansas City Southern train on the northern track traveling east, and saw the warning lights for that set of tracks flashing. He slowed down and crossed the first set of southern tracks. Just as he got to the second set of southern tracks, he suddenly saw the Illinois Central train approaching from his right on those tracks only a few feet from the crossing. This train struck the front of his car and pushed it sideways out of the path of the engine. This suit was filed to recover consequent damages from the railroad.
The major factual dispute in this case is whether the set of warning lights for the two southern tracks was flashing at the time of the accident. Based on the testimony of the engineer and brakeman who were in the lead engine, as well as the signal maintenance man and a railroad signal light expert, the trial judge found it more probable than not that these lights were working properly. Plaintiff, and a woman in a following car, both testified that the lights were not flashing, and he urges here that the contrary finding by the trial judge was manifestly erroneous.
In Canter v. Koehring, 283 So.2d 716 (La.1973), our Supreme Court enunciated the rule that “when there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court’s finding, on review the appellate court should not disturb this factual finding in the absence of manifest error” (at 724). In Arceneaux v. Domingue, 365 So.2d 1330 (La.1979), the court further explained that a factual determination should not be disturbed unless the entire record shows that that determination is “clearly wrong”. Our review of the entire record before us reveals no manifestly erroneous nor clearly wrong factual finding, and we therefore affirm the trial court’s judgment in favor of the defendant.
As noted above, there were two independently activated sets of warning lights, one for the northern most track, and one for the two southernmost tracks. There is no dispute that the northernmost lights functioned properly as a train went through the intersection traveling east. The main question is therefore whether the southernmost warning lights were working when plaintiff drove into the path of the westbound train.
It was established at trial that the lights in question were designed and built according to standards recognized in the railroad industry. Wayne Kennedy, defendant’s signal maintenance and inspection man, testified that regular inspections of these lights in August and September, 1985, revealed no defects or problems. The accident occurred on October 6, 1985. On October 8, in response to plaintiff’s contention that the lights were not working, Kennedy conducted a complete inspection of the entire system and found it to be working properly.
Ronald Kraft was the brakeman on the Illinois Central train, which consisted only of two locomotives and a box-car. He testified that he was sitting on the left hand side of the lead engine, the side from which plaintiff was approaching in his car. Kraft said that when the train was 200 to 300 *953 feet from the crossing, he saw the car slowing down as if to stop. It was not until the train was fifty feet away that he realized that the car was not going to stop clear of the tracks, and he immediately hollered to J.W. Brumfield, the engineer, to apply the emergency brakes. Kraft further stated that the headlight and warning bells on the engine were on, that the horn was being sounded during the approach to the crossing, and that the warning lights on his side of the track were working properly.
J.W. Brumfield, the engineer, was sitting on the right side of the lead engine. He testified that he turned on the engine bell and began sounding the horn some 1000 to 1200 feet before the crossing, and saw the warning lights at the crossing flashing as the train approached. He further stated that he put on the emergency brakes the moment Kraft yelled, but only got a glimpse of plaintiffs car right before impact.
After impact, the train came to a stop past the intersection and the crew jumped down and ran back to the crossing to assist plaintiff. They determined that he had a cut on his head but otherwise appeared unhurt. The police arrived shortly, and conducted an investigation.
When the police reached the scene, the train had not been moved from where it had stopped, and the signal lights were not flashing. Plaintiff claimed at the scene that the signals were not flashing as he approached the tracks, and Lisa Ebeyer, who was following plaintiff about 75 to 100 feet back, also stated that she did not see the lights flashing. The investigating officer thereupon directed the train crew to back the train into the crossing, and when this was done the signal lights began flashing.
John Laughlin testified as an expert in railroad signals for the defendant. His expertise consisted of some 40 years experience in the design, installation and maintenance of such signals. He testified that he had inspected the signals at issue before trial and found them to be of standard design and construction, and well maintained. He further stated that considering the good maintenance, the fact that no defects were found in regular pre-accident inspections or in the more thorough inspection made two days after the accident, and the fact that the signals were activated when the train was backed into the crossing, it was his opinion that the signals were operating properly at the time of the accident.
During the course of his testimony he also explained the operation of these signals and described their design as being “fail-safe”. According to his testimony, there are two separate electrical circuits in the system. The first controls the electrical switches, and the second provides power to the lights themselves. The switches which turn on the signals are held open by electromagnets which in turn are energized by the first electrical current which runs through the rails of the track. When a train reaches a certain point on the track as it approaches a crossing, it shorts out the current going into the switches and thus de-energizes the electromagnets. When this happens, the metal contacts which were being held up by the magnets fall down by the force of gravity and complete the second electrical circuit which in turn causes the signals to flash. He explained that because of this design, any short or failure in the first circuit which interrupted the flow of current into the electromagnets would immediately cause the metal contacts to fall and thus turn on the signal lights, whether a train were approaching or not.
He further testified that the signals for the northern track and those for the two southern track had completely separate systems for the first electrical current which controls the switches. However, these signals shared a common commercial electrical power source via underground wires for the second circuit which activated the lights, and this common system was also designed with batteries which would provide electricity in the event of a commercial power failure. He ruled out the possibility that the commercial power source as well as the batteries had failed *954 because had this happened the northern track signals would not have come on, and there is no dispute that this set was working properly. He further noted that there was no evidence of any digging or other work in the area which might have cut the underground power line to the southern signals, and any suggestion that this line had been cut was further belied by the fact that these lights began flashing when the train was backed toward the crossing. He finally stated that although it is not impossible for these systems to fail, when they do the problem is not “self-healing” and is usually obvious on inspection. He thus found it significant that no problems with this system had ever been noted before or after the accident and that the post accident inspection had revealed no defects.
By the way of rebuttal, plaintiff called George Hero, an expert in electrical engineering. This witness candidly admitted to having no first hand experience with railroad signals, but stated that based on the testimony of Kennedy and Laughlin, he understood how the system worked. Although he was unable to point to any specific facts in evidence which indicated a malfunction in the system at issue, he nonetheless concluded that because plaintiff and Mrs. Ebeyer stated that the lights were not flashing, and because any electrical system can fail, these lights were probably not functioning properly.
Based on this evidence the trial judge concluded that “it is more probable than not that the [signal] lights were flashing”. Applying the rule of Canter v. Koehring supra, we cannot say that this finding is “manifestly erroneous”. The testimony of the brakeman and the engineer was that the lights were flashing, and the signal maintenance man stated that he could find no defects in the system in his post-accident inspection. The signal expert testified at length as to how these systems work, and indicated that although they can possibly fail, such failures are not “self-healing” and their causes are almost always obvious on inspection. He gave the opinion that the lights were working properly. On the other hand, plaintiff and a following motorist testified that the lights were not working. Plaintiffs expert admitted to having no prior experience or knowledge of signal devices, and was unable to point to any specific evidence which might have shown the existence of a defect. His opinion that a defect existed was thus based on the testimony of plaintiff and his witness, and on the bare assertion that any electrical system can fail. See Arceneaux v. Domingue, supra.
In this court’s opinion, there was evidence before the trial judge which, upon reasonable evaluation of credibility, furnished a reasonable factual basis for the trial court’s finding. Based on this finding, the trial judge ruled that the cause of the accident was plaintiff’s violation of La.R.S. 32:171, which mandates that a motorist must stop at a railroad crossing when a signal device gives warning of an approaching train. We find nothing erroneous in this ruling, and therefore affirm the judgment of the trial court.
AFFIRMED.
*955 APPENDIX
[[Image here]]